UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

RANDY BERKSHIRE #371645,

        Plaintiff,                      Hon. Paul L. Maloney

v.                                      Case No. 1:19-CV-808

JESSICA HAZEL, et al.,

        Defendants.

_____/

## REPORT AND RECOMMENDATION

This matter is before the Court on Plaintiff's Motion for Partial Summary Judgment (ECF No. 120), Defendants' Motion for Summary Judgment (ECF No. 150), and Defendants' Motion for Summary Judgment (ECF No. 153). Pursuant to 28 U.S.C. § 636(b)(1)(B), the undersigned recommends that Plaintiff's motion be denied, Defendants' motions be granted, and this action terminated.

## BACKGROUND

In his amended complaint (ECF No. 53), Plaintiff alleges the following. On or about January 9, 2018, Plaintiff was incarcerated at the Calhoun County Jail during which time he was classified as a "general population" inmate. On or about March 27, 2019, Plaintiff was transferred to the Kalamazoo County Jail because Plaintiff's "witness status" created a "dangerous and hostile living environment for Plaintiff at the [Calhoun County Jail]."

After arriving at the Kalamazoo County Jail, Plaintiff was subjected to a "total or near-total deprivation of exercise or recreational opportunity." This deprivation was the result of a policy "promulgated and enforced by" Kalamazoo County Sheriff Matthew Saxton. On May 30, 2019, KCJ Corrections Officer (CO) James Varda falsely charged Plaintiff with a misconduct violation in retaliation for Plaintiff having previously filed a grievance against Varda. Lieutenant Logan Bishop later facilitated Plaintiff's transfer back to the Calhoun County Jail because of Plaintiff's practice of filing grievances.

On or about June 7, 2019, Plaintiff was transferred back to the Calhoun County Jail (CCJ). Upon his return to CCJ, Classification Officer (CO) Jessica Hazel classified Plaintiff as requiring protective custody and, therefore, placed Plaintiff in administrative segregation. When Plaintiff asked Hazel why she placed him in protective custody, Hazel responded, "I finally got your ass right where I want you. All those grievances you filed against me has caught up with you. By the time you get out of segregation you'll never file another grievance again."

While in protective custody, Plaintiff was prohibited from "accessing toilet brushes, nor was there any other cleaning arrangements implemented that provided Plaintiff with an opportunity to clean his toilet." As a result, "the inside of Plaintiff's toilet was caked with human feces emitting an obnoxious odor." CO Hazel was aware of these unsanitary conditions, but failed to take action to remedy such.

On June 17, 2019, Plaintiff, suffering "serious depression . . . began to refuse all food and liquids." On June 20, 2019, Plaintiff was placed in an observation cell as a result of his "self-imposed hunger strike." Due to a policy enacted by Calhoun County

Sheriff Matthew Saxton, "all bedding and mattresses" were removed from the observation cells "for an extended period of time throughout each day."   As a result of this policy, Plaintiff spent approximately twenty hours "in an excessively cold cell in severe discomfort and shivering violently on a cold hard floor . . . causing severe physical pain."

On June 20, 2019, CO Hazel reported to the judge to which Plaintiff's then ongoing criminal matter was assigned that Plaintiff "had severely disrupted the operation of the jail and its staff" through his grievance activities.   The judge subsequently informed Plaintiff that "if such behavior continued . . . she would be inclined to sentence him outside of his . . . plea agreement."

Plaintiff initiated this action against Sheriff Saxton, Sheriff Fuller, CO Hazel, CO Varda, and Lieutenant Bishop.   Plaintiff alleges that Defendants violated his First and Eighth Amendment rights as well as his Fourteenth Amendment right to the equal protection of the law.   Defendants now move for summary judgment.   Plaintiff has also moved for summary judgment as to his retaliation claim against Defendant Varda.

## SUMMARY JUDGMENT STANDARD

Summary judgment "shall" be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."   Fed. R. Civ. P. 56(a).   Whether a fact is "material" depends on "whether its resolution might affect the outcome of the case."   *Harden v. Hillman*, - - - F.3d - - -, 2021 WL 1257802 at *4 (6th Cir., Apr. 6, 2021).

3

A party moving for summary judgment can satisfy its burden by demonstrating that the non-moving party, "having had sufficient opportunity for discovery, has no evidence to support an essential element of his or her case." *Minadeo v. ICI Paints*, 398 F.3d 751, 761 (6th Cir. 2005). Once the moving party makes this showing, the non-moving party "must identify specific facts that can be established by admissible evidence, which demonstrate a genuine issue for trial." *Amini v. Oberlin College*, 440 F.3d 350, 357 (6th Cir. 2006). The existence of a mere "scintilla of evidence" in support of the non-moving party's position, however, is insufficient. *Daniels v. Woodside*, 396 F.3d 730, 734-35 (6th Cir. 2005).

While the Court must view the evidence in the light most favorable to the non-moving party, that party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Amini*, 440 F.3d at 357. The non-moving party "may not rest upon [his] mere allegations," but must instead present "significant probative evidence" establishing that "there is a genuine issue for trial." *Pack v. Damon Corp.*, 434 F.3d 810, 813-14 (6th Cir. 2006). Likewise, the non-moving party cannot merely "recite the incantation, 'credibility,' and have a trial on the hope that a jury may disbelieve factually uncontested proof." *Fogerty v. MGM Group Holdings Corp., Inc.*, 379 F.3d 348, 353-54 (6th Cir. 2004).

Accordingly, summary judgment is appropriate "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Daniels*, 396 F.3d

at 735.   Stated differently, the "ultimate question is whether the evidence presents a sufficient factual disagreement to require submission of the case to the jury, or whether the evidence is so one-sided that the moving parties should prevail as a matter of law." *Harden*, 2021 WL 1257802 at *4.

While a moving party without the burden of proof need only show that the opponent cannot sustain his burden at trial, a moving party with the burden of proof faces a "substantially higher hurdle."   *Arnett v. Myers*, 281 F.3d 552, 561 (6th Cir. 2002). Where the moving party has the burden, "his showing must be sufficient for the court to hold that no reasonable trier of fact could find other than for the moving party." *Calderone v. United States*, 799 F.2d 254, 259 (6th Cir. 1986).   Accordingly, summary judgment in favor of the party with the burden of proof "is inappropriate when the evidence is susceptible of different interpretations or inferences by the trier of fact." *Hunt v. Cromartie*, 526 U.S. 541, 553 (1999).

## ANALYSIS

### I.    Deprivation of Exercise Opportunity – Defendant Fuller

Plaintiff alleges that Defendant Fuller "promulgated and enforced an unconstitutional policy, practice, or custom amounting to the total or near-total deprivation of exercise or recreational opportunity . . . without a legitimate penological justification."   Plaintiff further alleges that "the furnishings in [his] cell and the enclosure to which inmates are confined does not provide sufficient space allowing inmates to improvise any sort of exercise regimen."   Plaintiff alleges that these circumstances violated his Eighth Amendment rights.   Because Plaintiff was a pre-trial

5

detainee during the relevant period, his claims arise under the due process clause of the Fourteenth Amendment. *See, e.g., Richko v. Wayne County, Mich.*, 819 F.3d 907, 915 (6th Cir. 2016). The assessment of such claims, however, is undertaken pursuant to the familiar Eighth Amendment standard. *Ibid.*

The Eighth Amendment's prohibition against cruel and unusual punishment applies not only to punishment imposed by the state, but also to deprivations that occur during imprisonment and are not part of the sentence imposed. *See Farmer v. Brennan*, 511 U.S. 825, 834 (1994). The analysis by which a defendant's conduct is evaluated consists of two-steps. First, the Court must determine, objectively, whether the alleged deprivation was sufficiently serious. In this respect, Plaintiff "must show that he is incarcerated under conditions posing a substantial risk of serious harm." *Farmer*, 511 U.S. at 834. With respect to the objective prong of the analysis, contemporary standards of decency determine whether conditions of confinement are cruel and unusual. *See Hadix*, 367 F.3d at 525. Contemporary standards of decency are violated only by "extreme deprivations" which deprive the prisoner of the "minimal civilized measure of life's necessities." *Ibid.*

If the objective test is met, the Court must then determine whether Defendants acted with a "sufficiently culpable state of mind." *Farmer*, 511 U.S. at 834. In other words, was the individual deliberately indifferent to inmate health or safety. *Ibid.* However, the Eighth Amendment is not implicated where prison officials simply acted with negligence. *See Perez v. Oakland County*, 466 F.3d 416, 423 (6th Cir. 2006) (citing *Estelle v. Gamble*, 429 U.S. 97, 105-06 (1976)). In sum, to establish that a defendant

6

acted with deliberate indifference, Plaintiff must "present evidence from which a trier of fact could conclude 'that the official was subjectively aware of the risk' and 'disregard[ed] that risk by failing to take reasonable measures to abate it.' " *Greene v. Bowles*, 361 F.3d 290, 294 (6th Cir. 2004).

While incarcerated at the Kalamazoo County Jail, Plaintiff was housed in a cell measuring nine feet by six feet with a ten-foot ceiling.   (ECF No. 115-8, PageID.1531). Pursuant to jail policy, the extent to which inmates were permitted to exit their cell and the areas to which they were allowed to access was determined by their security classification.   (ECF No. 115-3, PageID.1470-71).   Plaintiff acknowledged that he was permitted to be out of his cell approximately eleven hours daily.   (ECF No. 115-1, PageID.1456-57).   When out of his cell, Plaintiff was permitted access to a "catwalk" which was forty inches wide by 47 feet long.   (ECF No. 115-8 , PageID.1531; ECF No. 142, PageID.2057).   Plaintiff also conceded that he could have performed exercises in his cell.   (ECF No. 115-1, PageID.1459).

While Plaintiff may have experienced frustration at not being able to exercise or recreate in the locations of his choosing, such does not run afoul of the Eighth Amendment.   Plaintiff concedes that he was permitted significant time out of his cell during which he could have exercised on the catwalk.   Plaintiff further concedes that he could have exercised in his cell.   The Eighth Amendment does not afford Plaintiff the right to exercise wherever or however he chooses, but rather protects Plaintiff against "extreme deprivations" which deprive him of the "minimal civilized measure of life's necessities."   Plaintiff's rights were not violated in this instance.   *See, e.g., Kizer v.*

*Robertson County, Tennessee*, 2018 WL 3199149 at *5 (M.D. Tenn., Apr. 16, 2018) (prisoner who was never permitted outdoor recreation over an eleven-month period did not suffer a violation of his Eighth Amendment rights because he was able to access a recreation area inside the jail for several hours daily); *Grzelak v. Ballweg*, 2014 WL 5101333 at *4 (W.D. Mich., Oct. 10, 2014) (where prisoner was allowed to exit his cell for only six hours over a twelve-month period, Eighth Amendment not violated because prisoner could have exercised in his cell). Accordingly, the undersigned recommends that Defendant Fuller's motion for summary judgment be granted.

## II.    Retaliation – Defendant Varda

On May 30, 2019, Defendant Varda charged Plaintiff with two misconduct violations: (1) a major misconduct for interfering with staff and (2) a minor misconduct for abuse of the jail's emergency alert system. (ECF No. 115-7, PageID.1525). Plaintiff was ultimately found guilty of abuse of the jail's emergency alert system, but not guilty of interfering with staff. (ECF No. 115-7, PageID.1526). Plaintiff was not given any discipline for interfering with the jail's emergency alert system. (ECF No. 115-1, PageID.1460). Plaintiff alleges that Defendant Varda charged him with these misconduct violations in retaliation for having previously filed a grievance alleging misconduct by Varda.

To prevail on a retaliation claim, Plaintiff must satisfy three elements: (1) he was engaged in constitutionally protected conduct; (2) Defendant took adverse action against him which would deter a person of ordinary firmness from continuing to engage in protected conduct; and (3) the adverse action was motivated by Plaintiff's protected

conduct.    *See Holzemer v. City of Memphis*, 621 F.3d 512, 520 (6th Cir. 2010).

      1.     Protected Conduct

It is unquestioned that the First Amendment affords prisoners the right to file grievances regarding the conditions of their confinement.    This right, however, protects only the filing of non-frivolous grievances.    *See, e.g., Maben v. Thelen*, 887 F.3d 252, 264 (6th Cir. 2018).    Thus, an inmate "cannot immunize himself from adverse administrative action by prison officials merely by filing a grievance or lawsuit and then claiming everything that happens to him is retaliatory."    *Ibid*.    Defendant Varda argues that he is entitled to relief because the grievances Plaintiff filed while at the Kalamazoo County Jail were frivolous and abusive.

The Court concludes, as discussed below, that the grievance on which this retaliation claim is based was, in fact, frivolous.    The Court, however, disagrees with Defendant's argument that, because other grievances, unrelated to this particular retaliation claim, were frivolous, Plaintiff cannot establish the "protected conduct" element of the analysis.    Stated differently, that Plaintiff may have filed other grievances that are properly characterized as frivolous or abusive does not compel the conclusion that the grievance which forms the basis of the present claim is frivolous or otherwise does not constitute protected conduct.    Instead, the Court must examine the specific grievance in response to which Plaintiff claims he was subjected to retaliation.

The grievance underlying this claim was filed by Plaintiff on May 30, 2019.    (ECF No. 115-5, PageID.1507).    To understand why this grievance was frivolous or abusive, an examination of the previous day's events is necessary.    On May 29, 2019, Plaintiff

filed a grievance after Defendant Varda failed to quickly enough respond to Plaintiff's request to have a television turned on.  (ECF No. 115-5, PageID.1506).  Dissatisfied that the television was not turned on quickly enough, somebody pressed the emergency call button "in an attempt to have the television turned on" more quickly.[1]  (*Id*.).

In response, Defendant Varda "unplugged" the television stating, "someone thinks the TV is an emergency, well it's not."  (*Id*.).  In his initial grievance, Plaintiff complained that Varda's actions constituted "group discipline," which was improper because "nowhere is it spelled out that the television may be utilized as a disciplinary measure."  Defendant Varda rejected Plaintiff's grievance, stating, "use of the emergency button is only for true emergencies!  The TV is a privilege, not a ri[ght].  If you feel this is unfair, I can proceed with a write-up for this incident."  (*Id*.).

Dissatisfied with this response, Plaintiff responded by filing the grievance that forms the basis of this claim.  On May 30, 2019, Plaintiff filed a grievance charging Defendant Varda with retaliation and violation of due process.  (ECF No. 115-5, PageID.1507).  Specifically, Plaintiff alleged that Defendant Varda "threatened to covertly retaliate against me with false disciplinary charges as a result of a grievance I filed against him."  (*Id*.).  Defendant Varda did not threaten to retaliate against Plaintiff.  Rather, Varda exhibited restraint by not initially charging Plaintiff with a misconduct for pressing the emergency call button.  Varda attempted to educate

---

1 Plaintiff does not indicate in his grievance who pressed the emergency call button, but instead merely states that the emergency call button "was pressed."  A hearing officer subsequently determined, however, that Plaintiff was, in fact, the individual who pressed the emergency call button.  (ECF No. 115-7, PageID.1525-26).

10

Plaintiff, without charging him with a misconduct, why his behavior was inappropriate. Rather than respond by positively modifying his behavior, Plaintiff filed a frivolous grievance lacking any merit.   As such, this grievance does not constitute protected conduct.   *See, e.g., Maben*, 887 F.3d at 264 ("abusive or manipulative use of a grievance system would not be protected conduct"); *Medlock v. Trierweiler*, 2020 WL 2576157 at *4 (W.D. Mich., Mar. 9, 2020) (filing a grievance qualifies as protected conduct only if the grievance has merit).

2.    Adverse Action

Adverse action is action "that would deter a person of ordinary firmness from the exercise of the right at stake."   *Maben*, 887 F.3d at 266.   When assessing whether the issuance of a misconduct ticket rises to the level of adverse action, courts consider both the punishment the prisoner could have received as well as the punishment he did receive.   *Ibid.*   Assessment of these factors leads to the conclusion that Plaintiff did not suffer any adverse action.

Defendant Varda charged Plaintiff with a major and a minor misconduct violation. According to jail policy, being found guilty of a single minor misconduct violation results in no action against the prisoner.   (ECF No. 115-3, PageID.1479-80).   Instead, if the prisoner is found guilty, within a 30-day period, of two minor misconducts charged by two different officers, the "inmate will be reviewed by the classification officer" and "new housing assigned."   (ECF No. 115-3, PageID.1480).   If a prisoner is found guilty of a major misconduct, the prisoner will be "reclassified to Max Level 1 or 2 depending on the violation."   (*Id.*).

11

When Plaintiff was processed into the Kalamazoo County Jail, he was classified as "maximum security" level 2.  (ECF No. 115-2, PageID.1465-67; ECF No. 115-3, PageID.1470).  Because Plaintiff was already detained in maximum security level 2 when he was charged by Varda with the misconduct violations, it is not clear what additional punishment or sanction Plaintiff could have received had he been found guilty of the major misconduct charge.  As for the minor misconduct violation, Plaintiff, despite being found guilty, received no discipline or sanction.  The Court, therefore, concludes that being charged with the two misconduct violations by Defendant Varda did not constitute adverse action as such was insufficient to deter a person of ordinary firmness from continuing to engage in constitutionally protected conduct.

3.    Causation

With respect to causation, courts recognize that retaliation is easy to allege and "is often very difficult to prove with direct evidence."  *King v. Zamiara*, 680 F.3d 686, 695 (6th Cir. 2012).   Nonetheless, "bare allegations of malice" are insufficient to state a constitutional claim, as Plaintiff must instead establish "that his protected conduct was a motivating factor" behind the allegedly retaliatory action taken.  *Thaddeus-X*, 175 F.3d at 399 (citations omitted).   Conclusory allegations of retaliatory motive are insufficient, however.  *See Skinner v. Bolden*, 89 Fed. Appx. 579, 579-80 (6th Cir., Mar. 12, 2004).   Instead, Plaintiff must, at a minimum, allege a chronology of events from which retaliation can plausibly be inferred.  *See Desmone v. Adams*, 1998 WL 702342 at *3 (6th Cir., Sep. 23, 1998); *Muhammad v. Close*, 379 F.3d 413, 417-18 (6th Cir. 2004).

12

On summary judgment, the causation element is analyzed under the burden-shifting framework articulated in *Mount Healthy City School District Board of Education v. Doyle*, 429 U.S. 274 (1977). *See Thomas v. Eby*, 481 F.3d 434, 441-42 (6th Cir. 2007). Plaintiff must first present evidence that his protected conduct was a motivating factor in the defendant's action. Even if Plaintiff makes this showing, Defendant is entitled to summary judgment if he demonstrates that he "would have taken the same action even without the protected activity." *Eby*, 481 F.3d at 441-42. Moreover, as the Supreme Court recently held, when alleging retaliation "it is not enough to show that an official acted with a retaliatory motive and that the plaintiff was injured – the motive must *cause* the injury. Specifically, it must be a "but-for" cause, meaning that the adverse action against the plaintiff would not have been taken absent the retaliatory motive." *Nieves v. Bartlett*, 139 S.Ct. 1715, 1722 (2019).

In charging Plaintiff with misconduct violations, Defendant Varda stated that he did so not because Plaintiff filed a grievance against him, but instead because his attempt to informally correct Plaintiff's behavior was unsuccessful, as evidenced by Plaintiff's filing of a frivolous and abusive grievance. (ECF No. 115-7, PageID.1525). Defendant Varda's rationale constitutes a legitimate response to Plaintiff's failure to modify his behavior and was not motivated by any protected conduct by Plaintiff. In sum, for the reasons articulated herein, the undersigned recommends that Defendant Varda's motion for summary judgment be granted. Plaintiff has also moved for partial summary judgment with respect to this claim. For the reasons articulated herein, the undersigned recommends that Plaintiff's motion be denied.

### III.    Retaliation – Defendant Bishop

Plaintiff alleges that on or about June 7, 2019, Defendant Bishop arranged to have him transferred back to the Calhoun County Jail.    Plaintiff alleges that, upon being transferred to the Calhoun County Jail, he was placed in "a dangerous and hostile living environment."    Plaintiff alleges that Bishop transferred him in retaliation for "the exercise of protected conduct."

With respect to the protected conduct element, Plaintiff is not alleging that Bishop arranged his transfer in retaliation for one specific grievance.    Instead, Plaintiff alleges that Bishop arranged his transfer in retaliation for his grievance activity in general. While many of Plaintiff's grievances were frivolous or abusive, others were not.    For example, Plaintiff's grievances regarding the alleged over-charging for prescriptions or the failure of jail officials to locate and deliver personal legal documents, while unsuccessful, do not appear to have been frivolous or abusive.    Defendant Bishop has failed to establish, therefore, that Plaintiff was not engaged in protected conduct with respect to this particular claim.    Plaintiff's claim fails, however, because he cannot satisfy either of the remaining elements.

It is well accepted that a transfer from one prison or jail to another constitutes adverse action only where such results in "foreseeable [negative] consequences" to the prisoner.    *Siggers-El v. Barlow*, 412 F.3d 693, 701-02 (6th Cir. 2005) ("prisoners are expected to endure more than the average citizen, and since transfers are common among prisons, ordinarily a transfer would not deter a prisoner of ordinary firmness from

continuing to engage in protected conduct").   While Plaintiff asserts in conclusory fashion that he suffered adverse action, he has presented no evidence demonstrating that there existed any negative consequence, foreseeable to Defendant Bishop, resulting from his transfer.   Accordingly, Plaintiff cannot satisfy this element of his claim.

Finally, Plaintiff cannot demonstrate the requisite causal link between his allegedly protected conduct and the alleged adverse action he suffered.   As the Sixth Circuit has observed, if a prisoner transfer is "necessary for operational needs (because of discipline problems, for instance) then the transfer would not have been in retaliation to the exercise of protected conduct."   *Id*. at 702.   Plaintiff does not dispute that he filed many grievances while housed at the Kalamazoo County Jail.   As already discussed, several of these grievances were frivolous or abusive.   Not surprisingly, Defendant Bishop eventually determined that due to Plaintiff's obstreperous and disruptive behavior, a transfer would be in the best interests of staff and other inmates.   (ECF No. 142-11, PageID.2129).   In sum, because Plaintiff was transferred for a legitimate penological reason, he cannot establish the necessary causal connection to maintain this claim.   Accordingly, for the reasons discussed herein, the undersigned recommends that Defendant Bishop's motion for summary judgment be granted.

## IV.   Retaliation – Defendant Hazel

Plaintiff asserts two separate retaliation claims against Defendant Hazel.   First, Plaintiff alleges that Hazel assigned him to administrative segregation in retaliation for his "prior protected activities."   Plaintiff next alleges that Hazel falsely reported to the judge to which his then pending criminal matter was assigned that Plaintiff "had

severely disrupted the operation of the jail and its staff" through his grievance activities. Before addressing Defendant's primary argument, the Court must address two unpersuasive procedural arguments advanced by Defendant: (1) failure to exhaust administrative remedies, and (2) res judicata.

With respect to exhaustion, Defendant concedes that Plaintiff filed grievances regarding his retaliation claims.  (ECF No. 154, PageID.2265).  Defendant argues, however, that because Plaintiff "did not comply with the other portions of the Jail's grievance policy," his exhaustion efforts are insufficient.  While Plaintiff may have failed to comply with certain aspects of the Jail's grievance policy, Defendant has failed to demonstrate that Plaintiff's grievances were rejected on this basis.  Thus, this argument is rejected.  *See, e.g., Reed-Bey v. Pramstaller*, 603 F.3d 322, 325 (6th Cir. 2010) (where prison officials declined to enforce a grievance-related procedural requirement, defendant cannot rely on the prisoner's failure to comply with the procedure in question to obtain dismissal on exhaustion grounds).

Defendant also argues that Plaintiff's retaliation claims are barred by the doctrine of res judicata.  Plaintiff's retaliation claims against Defendant Hazel are based upon events occurring in 2019, well after the October 2018 dismissal of a previous action Plaintiff asserted against Defendant Hazel.  *See Berkshire v. Hazel*, 1:18-cv-949, ECF No. 8 (W.D. Mich.).  As such, res judicata is not presently applicable.  Accordingly, this argument is rejected.

A.    Placement in Administrative Segregation

Plaintiff alleges that, upon his transfer to the Calhoun County Jail in June 2019, Hazel assigned him to administrative segregation in retaliation for having filed grievances when previously housed at the Calhoun County Jail.    Even if Plaintiff could establish the protected conduct and adverse action elements, his claim fails because he cannot establish the requisite causal link between Defendant Hazel's decision to place him in administrative segregation and his allegedly protected conduct.    With respect to causation, Plaintiff offers only unsubstantiated conclusions.    The evidence presented by Defendant, however, makes clear that Plaintiff was placed in administrative segregation for legitimate reasons unrelated to his prior grievance activity.

In her affidavit, Defendant Hazel asserts that Plaintiff was assigned to administrative segregation "because of his classification status, criminal history, history of institutional misconduct, and security issues with other inmates."    (ECF No. 155, PageID.2289).    Plaintiff has conceded that when he was previously housed at the Calhoun County Jail he filed frivolous and abusive grievances.    (ECF No. 118-2, PageID.1638-39; ECF No. 118-9, PageID.1766-68).    Documents establish that, during his previous incarceration at the Calhoun County Jail, Plaintiff engaged in numerous acts of misconduct.    (PageID.118-7, PageID.1731-50).    Jail officials further determined that placing Plaintiff in administrative segregation was appropriate due to the fact that Plaintiff had "many enemies" within the jail population because he had testified or provided information regarding several other matters.    (ECF No. 115-6, PageID.1521; ECF No. 118-7, PageID.1730).

17

In sum, Defendant Hazel has established that the decision to place Plaintiff in administrative segregation upon his return to the Calhoun County Jail was not motivated by Plaintiff's prior grievance activity, but was instead prompted by legitimate penological considerations.   Accordingly, the undersigned recommends that Defendant Hazel's motion for summary judgment be granted as to this claim.

B.    Communicating with the Judge

In his complaint, Plaintiff alleges that Defendant Hazel reported to the court that Plaintiff "had severely disrupted the operation of the jail and its staff" through his grievance activities.   Plaintiff further alleges that at a subsequent court hearing, the judge informed Plaintiff that "if such behavior continued . . . she would be inclined to sentence him outside of his . . . plea agreement."   Plaintiff alleges that Hazel reported this information to the judge in retaliation for filing unspecified grievances.   Even if the Court assumes that Plaintiff can satisfy the protected conduct element, his claim fails because he cannot establish the adverse action or causation elements.

On June 20, 2019, Plaintiff appeared before the Honorable Sarah Lincoln.   (ECF No. 115-6, PageID.1518-22).   While Judge Lincoln did take the opportunity to discuss with Plaintiff, his disruptive behavior in the Calhoun County Jail, Plaintiff has mischaracterized the judge's comments.   The judge did not indicate that she was inclined to sentence Plaintiff beyond the terms of his plea agreement as Plaintiff alleges. Rather, the judge merely pointed out to Plaintiff that if he continued to engage in disruptive behavior such may impact her assessment as to his sentence.   This distinction, while subtle, is nevertheless significant.   While it may be inappropriate to

18

threaten an inmate with a greater sentence if he fails to modify his behavior, the Court discerns nothing improper about a judge merely informing an inmate that his behavior while incarcerated may be a relevant consideration when determining his sentence.

The judge also reiterated to Plaintiff that he had the right to file grievances regarding his conditions of confinement, but she encouraged Plaintiff to do so more responsibly.   The judge further encouraged Plaintiff to take better care of his physical and mental health.   The judge took no action against Plaintiff and Plaintiff has presented no evidence that the sentence he ultimately received in any way took into consideration his extensive misconduct while at the Calhoun County Jail.   Simply put, the Court fails to discern how his brief interaction with Judge Lincoln could be characterized as adverse action.

With respect to the causation factor, Plaintiff's claim fails for two reasons.   First, Plaintiff has failed to present evidence that Defendant Hazel was the person who reported Plaintiff's misconduct to Judge Lincoln.   Second, even if the Court assumes that Defendant Hazel did communicate with Judge Lincoln, it is clear that Hazel did so due to Plaintiff's well-established misconduct and not because of any legitimate protected conduct in which Plaintiff may have been engaged.   Accordingly, the undersigned recommends that Defendant Hazel's motion for summary judgment be granted as to this claim.

## V.    Eighth Amendment – Defendant Hazel

Plaintiff alleges that from June 7, 2019, through July 19, 2019, he was prohibited from "accessing toilet brushes, nor was there any other cleaning arrangements implemented that provided Plaintiff with an opportunity to clean his toilet."   As a result, "the inside of Plaintiff's toilet was caked with human feces emitting an obnoxious odor."   Plaintiff alleges that this circumstance violated his Eighth Amendment rights. As noted above, to prevail on this claim, Plaintiff must demonstrate that he was subjected to "extreme deprivations" which deprived him of the "minimal civilized measure of life's necessities."   Plaintiff must also establish that Defendant had actual knowledge that he was being subjected to such deprivations.   Plaintiff cannot make either showing.

Taking the subjective element first, Plaintiff has presented no evidence demonstrating that Defendant Hazel had actual knowledge of the alleged condition of his toilet.   Defendant Hazel asserts in her affidavit that she "was not involved in assessing any cell sanitary or temperature conditions or any bedding conditions for [Plaintiff] during his incarceration in the Calhoun County Jail."   (ECF No. 155, PageID.2288).   Plaintiff has presented no evidence to the contrary.   Plaintiff's argument that his filing of a grievance regarding his dirty toilet was sufficient to establish actual knowledge by Hazel is not persuasive.   As discussed above, Plaintiff had a habit of filing frivolous and meritless grievances.   Thus, the mere fact that he submitted a grievance alleging that his toilet was dirty does not establish that Defendant Hazel had actual knowledge of any such circumstance.   Moreover, in her response to

Plaintiff's grievance, Defendant Hazel indicated that she was not even going to entertain the matter. (ECF No. 139-10, PageID.2029-30). In sum, Plaintiff cannot establish that Defendant Hazel had actual knowledge of the alleged condition of his toilet.

As for the objective element, it is well established that "not every unpleasant experience a prisoner might endure while incarcerated constitutes cruel and unusual punishment within the meaning of the Eighth Amendment." *Ivey v. Wilson*, 832 F.2d 950, 955 (6th Cir. 1987). While being housed in a cell with a dirty toilet for 42 days may be unpleasant, such simply does not implicate the Eighth Amendment. *See, e.g., Artis v. Ingham County Jail*, 2017 WL 5380898 at *8 (W.D. Mich., Nov. 14, 2017) (being deprived of a working toilet which exposes the inmate "to the smell of feces is not sufficient to state an Eighth Amendment claim"); *Cooper v. Belt*, 2017 WL 2469239 at *7 (W.D. Ky., June 7, 2017) (noting with approval a decision holding that the Eighth Amendment not violated where inmate was housed, for six months, in "hot cells, infested with vermin and smeared with urine and feces, with only cold food in smaller portions and infrequent changes of linen"). Accordingly, for the reasons discussed herein, the undersigned recommends that Defendant Hazel's motion for summary judgment be granted as to this claim.

## VI. Fourteenth Amendment – Defendant Hazel

Plaintiff alleges that the decision by Defendant Hazel to place him in administrative segregation upon his return to the Calhoun County Jail violated his Fourteenth Amendment right to the equal protection of the law.

21

The Equal Protection Clause of the Fourteenth Amendment to the United States Constitution provides that no state shall "deny to any person within its jurisdiction the equal protection of the laws."   U.S. Const. amend. XIV, § 1.   To prevail on his equal protection claim, Plaintiff must demonstrate that Defendant treated him "disparately as compared to similarly situated persons and that such disparate treatment either burdens a fundamental right, targets a suspect class, or has no rational basis."   *Center for Bio-Ethical Reform, Inc. v. Napolitano*, 648 F.3d 365, 379 (6th Cir. 2011).   The Supreme Court has also recognized what is referred to as a "class-of-one" equal protection claims in which Plaintiff does not allege membership in a particular class or group, but instead alleges that he "has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment." *Davis v. Prison Health Services*, 679 F.3d 433, 441 (6th Cir. 2012).

Plaintiff's claim fails for at least two reasons.   First, Plaintiff has presented no evidence that he was treated "disparately as compared to similarly situated persons." Second, as discussed above, Defendant had a sufficiently rational basis for assigning Plaintiff to administrative segregation.   The undersigned recommends, therefore, that Defendant Hazel's motion for summary judgment be granted as to this claim.

## VII.    Eighth Amendment - Defendant Saxton

Finally, Plaintiff alleges that Defendant Saxton violated his Eighth Amendment rights.    Specifically, Plaintiff alleges that on June 20, 2019, he was placed in an observation cell in response to his "self-imposed hunger strike."    Plaintiff alleges that pursuant to a policy approved by Saxton "all bedding and mattresses" were removed from the observation cells "for an extended period of time throughout each day."

As noted above, Eighth Amendment claims have both an objective and subjective element.    Plaintiff's claim fails because he cannot satisfy the objective element.    Even if Plaintiff's allegations are true, the brief deprivation of a mattress and bedding, in the absence of evidence that such resulted in physical injury, simply does not violate the Eighth Amendment.[2]    *See, e.g., Richmond v. Settles*, 450 Fed. Appx. 448, 455 (6th Cir., Dec. 2, 2011).

## <u>CONCLUSION</u>

For the reasons articulated herein, the undersigned recommends that Plaintiff's Motion for Partial Summary Judgment (ECF No. 120) be denied; Defendants' Motion for Summary Judgment (ECF No. 150) be granted; Defendants' Motion for Summary Judgment (ECF No. 153) be granted; and this action terminated.

---

2  The Court notes that, while Plaintiff alleges that he suffered grievous physical injury due to the denial of a mattress and bedding, he has produced no evidence of such.

For the same reasons underlying these recommendations, the undersigned finds that an appeal of such would be frivolous. *Coppedge v. United States*, 369 U.S. 438, 445 (1962). Accordingly, the undersigned further recommends that an appeal of this matter by Plaintiff would not be in good faith.

OBJECTIONS to this Report and Recommendation must be filed with the Clerk of Court within fourteen days of the date of service of this notice.  28 U.S.C. § 636(b)(1)(C).  Failure to file objections within the specified time waives the right to appeal the District Court's order.  *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir.1981).

Respectfully submitted,

Date: July 27, 2021                          /s/ Phillip J. Green
                                             PHILLIP J. GREEN
                                             United States Magistrate Judge